```
            UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF TEXAS
                  BROWNSVILLE DIVISION

LAURA NANCY CASTRO, ET AL, IN THEIR OWN     )
   NAMES AND ON BEHALF OF ALL OTHERS        )
   SIMILARLY SITUATED,                      )
v.                                          )
                                            )
MICHAEL T. FREEMAN, PORT DIRECTOR, U.S.     )
  CUSTOMS AND BORDER PROTECTION,            )
  BROWNSVILLE, TEXAS PORT OF ENTRY; ET AL   )   CA B-09-208
```

   PLAINTIFFS' AMENDED MOTION TO DETERMINE THE SUFFICIENCY OF
DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF REQUESTS FOR
       ADMISSION AND FOR COSTS, INCLUDING ATTORNEYS FEES
             WITH INCORPORATED POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.    BACKGROUND ........................................... 1

      A. DEFENDANTS' OBJECTION SPECIFIC TO 8 U.S.C. §1503
      ACTIONS OF PLAINTIFFS LAURA AND YULIANA CASTRO .......... 1
      B. DEFENDANTS' GENERAL OBJECTIONS ...................... 2

II.   THE PROBLEMS WITH DEFENDANTS' RESPONSES ................ 2

III.  ARGUMENT ............................................. 5

      A.  DEFENDANTS' OBJECTIONS TO REQUESTS NOs. 16, 44 - 49
      ARE UNJUSTIFIED, BECAUSE PLAINTIFFS' REQUESTS PROPERLY
      CALL FOR APPLICATION OF LAW TO FACT ..................... 5
      B. DEFENDANTS' OBJECTIONS TO REQUESTS IN GROUPS I, II,
      III, IV AND V ARE NOT MADE IN GOOD FAITH AS THE EVIDENCE
      DOES NOT SHOW THAT DEFENDANTS MADE A REASONABLE INQUIRY
      IN THEIR ATTEMPT TO RESPOND ............................. 7
      C.  DEFENDANTS' OBJECTIONS TO THE FORMAT OF PLAINTIFFS'
      RFAs AND ALLEGATIONS OF BURDEN ARE UNJUSTIFIED .......... 10
      D. PLAINTIFFS' RFAs COMPORT WITH THE SCOPE OF DISCOVERY.. 12

IV.   PLAINTIFFS' ATTEMPTS TO RESOLVE THE PROBLEM ............ 13

V.    CONCLUSION ........................................... 13

CERTIFICATE OF SERVICE ..................................... 15

## TABLE OF AUTHORITIES

### CASES

*American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke*,
    930 F.2d 1117 (5th Cir. 1991)  . . . . . . . . . . . . . . . 6

*Asea, Inc. v. S. Pac. Transp. Co.*,
    669 F.2d 1242 (9th Cir. 1981) . . . . . . . . . . . . . . . 8

*Berenyi v. INS*,
    385 U.S. 630 (1967) . . . . . . . . . . . . . . . . . . . 5

*Burns v. Thiokol Chemical Corp.*,
    483 F.2d 300 (5th Cir.1973) . . . . . . . . . . . . . . . 12

*Bustamante-Barrera*,
    447 F.3d 388 (5th Cir. 2006) . . . . . . . . . . . . . . . 5

*Carney v. IRS*,
    258 F.3d 415 (5th Cir. 2001) . . . . . . . . . . . . . . . 5

*Concerned Citizens v. Belle Haven Club*,
    223 F.R.D. 39 (D.Conn. 2004) . . . . . . . . . . . . . . . 8

*Cox v. McClellan*,
    174 F.R.D. 32 (W.D.N.Y. 1997) . . . . . . . . . . . . . . 13

*Diederich v. Department of Army*,
    132 F.R.D. 614 (S.D.N.Y. 1990) . . . . . . . . . 6, 8, 10, 11

*Duke v. University of Texas*,
    729 F.2d 994 (5th Cir. 1984) . . . . . . . . . . . . . . . 12

*Hammond v. Lowe's Home Centers, Inc.*,
    216 F.R.D. 666 (D. Kan. 2003) . . . . . . . . . . . . . . 12

*In re Sweeten*,
    56 B.R. 675 (Bankr. E.D.Pa 1986) . . . . . . . . . . . . . 8

*Langer v. Monarch Life Ins. Co.*,
    966 F.2d 786 (3d Cir. 1992) . . . . . . . . . . . . . . . 7

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . 12

*Scott v. Courtesy Inns, Inc.*,
    472 F.2d 563 (5th Cir. 1973) . . . . . . . . . . . . . . . 10

*Trevino v. Clinton et al*,
    CA B-07-218, (S.D. Tx) . . . . . . . . . . . . . . . . . . 5

*U.S. v. Taylor,*
    166 F.R.D. 356 (M.D.N.C. 1996) . . . . . . . . . . . . . . . . 8

*United Coal Cos. v. Powell Constr. Co.,*
    839 F.2d 958 (3d Cir. 1988) . . . . . . . . . . . . . . . . 11

*Washington v. Brown & Williamson Tobacco Corp.,*
    959 F.2d 1566 (11th Cir. 1982) . . . . . . . . . . . . . . . 13

**STATUTES**

8 U.S.C. §1503 . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4

**OTHER AUTHORITIES**

22 C.F.R. §51.2(a) . . . . . . . . . . . . . . . . . . 3, 4, 10, 14

Federal Rules of Civil Procedure,
    Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rules of Civil Procedure,
    Rule 36(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Civil Procedure,
    Rule 36(a)(6) . . . . . . . . . . . . . . . . . . . . . . . 1

Moore's Federal Practice - Civil
    §36.10 [6] . . . . . . . . . . . . . . . . . . . . . . . . 11

Moore's Federal Practice - Civil
    §36.10 [8] . . . . . . . . . . . . . . . . . . . . . . . . . 6

Moore's Federal Practice - Civil
    §36.11 [5][d] . . . . . . . . . . . . . . . . . . . . . . 7, 8

Wright, Miller & Cane, FEDERAL PRACTICE & PROCEDURE (2010)
    §2261 . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Wright, Miller & Cane, FEDERAL PRACTICE & PROCEDURE (2010)
    §2255 & n.8 . . . . . . . . . . . . . . . . . . . . . . . . 5

Plaintiffs, pursuant to Rule 36(a)(6), F.R.Civ.Proc., request that the Court determine the sufficiency of Defendants' Amended Responses to Plaintiffs' First Set of Requests for Admission, ("Responses"), [122]. Plaintiffs also seek attorneys' fees.

## I. BACKGROUND

On December 31, 2010, Plaintiffs filed a motion to determine the sufficiency of Defendants' responses to their first set of requests for admission, [119]. Because Defendants' lead counsel was leaving the country, there was, at that time, no opportunity to conduct full negotiations as to whether Defendants would amend their responses. Following her return, and extensive consultation, the amended version was submitted, [122]. However, the changes were primarily cosmetic, and resolved none of Plaintiffs' concerns.

### A. DEFENDANTS' OBJECTION SPECIFIC TO 8 U.S.C. §1503 ACTIONS OF PLAINTIFFS LAURA AND YULIANA CASTRO

Defendants first state, [122:4]:

> Defendants object to these requests for admission to the extent they exceed the scope of permissible discovery in this action. Plaintiffs Laura Castro and Yuliana Castro indicated in Court on September 24, 2009 that they would not bring 8 U.S.C. § 1503 claims in their amended complaint.

This is only partially correct. The agreement was that in exchange for dropping the §1503 claims, the citizenship of Laura and Yuliana Castro would be determined in removal proceedings. But Defendants never filed the NTA against Laura Castro. By definition, her U.S. citizenship therefore could not be determined in that forum. And when DOS issued her a U.S. passport, Defendants requested that the proceedings against Yuliana Castro be terminated *without prejudice*, [99:20-21].[1] Thus Defendants have made it clear that, to them, the issue of Laura and Yuliana's U.S. citizenship remains open, [122:5-

---

[1] DHS' motion apparently crossed in the mail with the IJ's order terminating for lack of jurisdiction, based on his assertion that he could only adjudicate her citizenship if CBP issued an order of expedited removal, [99:18-19]. Because this would entail mandatory detention, Ms. Castro deems it to be an inadequate remedy, and has appealed the IJ's order, [110].

6], and the only way of "settling" it is through 8 U.S.C. §1503. Otherwise, they will be forever vulnerable to a repetition of the problems that occurred on August 24, 2009, and possible mandatory detention while they go through the administrative removal process.

### B. DEFENDANTS' GENERAL OBJECTIONS

The instant action is styled as a class action, and the majority of the Requests for Admission, ("Requests" or "RFA") [115:9-26], were directed either at establishing numerosity of the various putative classes, or limiting outstanding legal issues.  In reply to this Court's Order to state their intention with respect to a motion for class certification, [113], Plaintiffs stated, [114]:

> Plaintiffs do intend to seek class certification. General discovery commenced on November 18, 2010, [104:3].  To properly document numerosity, Plaintiffs need some discovery on the issue, and have served their First Set of Requests for Admission.

### II.  THE PROBLEMS WITH DEFENDANTS' RESPONSES

Several RRAs attempted to establish orders of magnitude of the numerosity of each putative class: Nos. 17 - 23, ("Group I"), probed the boundaries of the number of cases in which Defendant Eliseo Cabrera has been involved, where applicants for entry with facially valid U.S. passports, and/or facially valid Texas birth certificates showing birth with the aid of a midwife, have been detained and interrogated, following which they signed documents allegedly withdrawing their applications for admission.

Nos. 24-28, ("Group II"), sought the same information regarding such cases in which Defendant Eliseo was not involved.

Nos. 29-35, ("Group III"), addressed cases involving Defendant Eliseo Cabrera, where passports, drivers licenses, or other documents were confiscated from applicants for entry with facially valid U.S. passports, and/or facially valid Texas birth certificates showing birth with the aid of a midwife, who signed documents allegedly withdrawing their applications for admission and who were not offered a due process hearing to contest the

seizure of their documents. Nos. 36 - 40, ("Group IV"), sought the same boundaries in cases where Defendant Cabrera was not involved.

Nos. 50 - 52, ("Group V"), sought to establish a "floor" under the denial of passport applications from people with facially valid Texas birth certificates showing birth with the aid of a midwife, on the grounds that the applicants allegedly failed to meet their burden of proving that s/he was born in Texas, *i.e.*, that they were U.S. nationals, within the meaning of 22 C.F.R. §51.2(a). The bottom of the "floor" was fifty cases, RFA No. 50 [122:32].

Defendants responded to each such request with the following identical language (emphasis added):

> Defendants object to this request on the grounds it is vague, ambiguous, compound, and overbroad. It also exceeds the scope of permissible discovery, and is irrelevant and not calculated to lead to the discovery of admissible evidence. Defendants further object on the grounds that this request is unduly burdensome and overbroad in scope, and Defendants lack knowledge or information to admit or deny the request for admission. *Defendants have made a reasonable inquiry but the information presently known or the information that can readily be obtained is insufficient to admit or deny the request, so Defendants deny the request for admission.*

In the Requests for Admission about the number of cases similar to those of the Castro Plaintiffs and Plaintiff Sampayo, involving Defendant Cabrera, it appears that Defendants' "reasonable inquiry" did not include asking Mr. Cabrera, since he has openly bragged to the Plaintiffs about how many such cases he has handled, and the number asserted by him significantly exceeded the minimum numbers Plaintiffs requested that Defendants admit. [2]

Nor is Defendants' response to Request No. 50 credible, [122:32]:

---

[2] In a recent encounter with Plaintiff Jessica Garcia, Defendant Cabrera said that had detained about fifteen such people, and had only failed in three cases, including hers, and the Castro sisters. And when he was processing Plaintiff Trinidad Muraira de Castro, he said that he had written down the cases in a notebook. Plaintiffs' have requested that said notebook be produced. [133].

> **REQUEST FOR ADMISSION NO. 50:**
>
> Admit that since September 7, 2004, the Department of State has denied at least 50 passport applications from people with facially valid Texas birth certificates showing birth with the aid of a midwife, on the grounds that the applicant allegedly failed to meet his/her burden of proving that s/he was born in Texas, *i.e.*, that s/he was a U.S. national, within the meaning of 22 C.F.R. §51.2(a).
>
> **RESPONSE TO REQUEST FOR ADMISSION NO. 50:**
> Defendants object to this request on the grounds it is vague, ambiguous, compound, and overbroad. It also exceeds the scope of permissible discovery, and is irrelevant and not calculated to lead to the discovery of admissible evidence. Defendants further object on the grounds that this request is unduly burdensome and overbroad in scope, and Defendants lack knowledge or information to admit or deny the request for admission. Defendants have made a reasonable inquiry but the information presently known or the information that can readily be obtained is insufficient to admit or deny the request, so Defendants deny the request for admission.

How many such applications have been denied is clearly relevant, where the case is styled as a class action, and the discovery is directed at establishing numerosity. The question is neither "vague" nor "ambiguous," and is obviously within the scope of permissible discovery. Nor is it "unduly burdensome" or "overbroad." And it is simply not believable that "Defendants have made a reasonable inquiry but the information presently known or the information that can readily be obtained is insufficient to admit or deny the request."

During their "consultations," Plaintiffs' counsel informed Defendants that they could probably come up with fifty such cases, just from local counsel. She also advised that, from what she had heard, about fifty such cases had been filed in district courts around the country. As previously asserted, [119:3]:

> On information and belief, counsel contends that §1503 actions have been filed in approximately fifty such

4

cases, and that this fact would be easily ascertainable within the office of Defendants' counsel.

Nonetheless, Defendants refuse to either admit or deny said request. Plaintiffs had also hoped to limit the issues to be litigated, and determine whether Defendants intended to pursue certain legal claims, such as the assertion put forth in *Trevino v. Clinton et al*, CA B-07-218, (S.D. Tx) [343:2-3], that even in birthright citizenship cases, such as those involved herein:

> "It has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect," and she must do so in the face of the Supreme Court's mandate that the court resolve all doubts "in favor of the United States" and against those seeking citizenship. *Bustamante-Barrera*, 447 F.3d at 395, *citing Berenyi v. INS*, 385 U.S. 630, 637 (1967.)

Defendants continue to rebuff this, and Plaintiffs' other attempts to clarify Defendants' legal claims, as follows, [122:10, 29-31]:

> Defendants object to this request on the grounds that it requests an admission to a pure legal conclusion, and such a request is not permitted by Fed. R. Civ. P. 36. *See Warnecke v. Scott*, 79 Fed. Appx. 5, 2003 WL 22391051, at *1 (5th Cir. Oct.21, 2003), *citing* Wright, Miller & Cane, FEDERAL PRACTICE & PROCEDURE § 2255 & n.8 (2010) (collecting cases) ("requests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions...."); *see also In re Carney*, 258 F.3d 415, 419 (5th Cir.2001). Defendants can neither admit or deny this request for an admission of a legal conclusion.

Plaintiffs assert that this misses the point.

### III.  ARGUMENT

**A.  DEFENDANTS' OBJECTIONS TO REQUESTS NOs. 16, 44 - 49 ARE UNJUSTIFIED BECAUSE PLAINTIFFS' REQUESTS PROPERLY CALL FOR APPLICATION OF LAW TO FACT.**

As the Fifth Circuit has recognized, "Rule 36 allows parties in discovery to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *Carney v. IRS,* 258 F.3d 415,419 (5th Cir. 2001) (internal citations

5

omitted).  Although the Rule does not contemplate requests as to pure matters of law, it expressly authorizes requests which seek "the truth of any matters within the scope of Rule 26(b)(1) relating to. . . the application of law to fact." Fed.R.Civ.Proc. 36(a)(1)(A). As such, "Rule 36 allows parties to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." *American Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke*, P.C., 930 F.2d 1117, 1121 (5th Cir. 1991)(citation omitted).

In RFA No. 16, 44-49, Plaintiffs specifically ask the "position" of DHS, DOJ, and DOS with respect to facts related to this case. *See id.* ("a request for admission based on an application of law to a hypothetical set of facts is improper"). Specifically, RFA No. 16 asks Defendant DHS to admit or deny a position on the availability of judicial review of U.S. citizenship claims based on facts relevant to Plaintiffs Laura and Yuliana Castro and Plaintiff Sampayo.  RFAs Nos. 44 and 45 ask for Defendants DHS to admit or deny their position regarding the right to counsel and permitting access to counsel with respect to facts relevant to Plaintiffs Laura, Yuliana and Trindad Castro, Plaintiff Sampayo, Plaintiff Garcia, and Plaintiff Alanis; RFAs No. 46 – 49 asks Defendants DOS, DHS, and DOJ to admit or deny their position in litigation under 8 U.S.C. §1503, which is relevant to all Plaintiffs. and, finally, RFA No. 49 asks Defendant DOS to admit or deny whether they may consider a specific piece of evidence in deciding whether to grant or deny a passport application.

Requests, such as these, which seek a party's admission or denial as to "what its obligations are as a matter of law" are permissible. Moore's Federal Practice - Civil § 36.10 [8]. As the district court aptly stated in *Diederich v. Department of Army*, 132 F.R.D. 614, 617 (S.D.N.Y. 1990):

> If an application of law to fact is requested, it is directed to, and the response is to be furnished by, the other party. Such information does not constitute work product and has no relationship to the attorney-client

> privilege. *What is merely involved is a request to confirm or deny if the requestor's interpretation of a law, regulation, etc. concurs and is in agreement with that of the other party*.. These Requests are not improper and must be answered in compliance with Rule 36(a).

*See also Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 805 (3d Cir. 1992) ("Rule 36 would cover an admission by Presbyterian as to what its [contractual] obligations were as a matter of law, because the text of the rule specifically authorizes requests for admissions of propositions of law as applied to fact."); *Parsons v. Best Buy Stores*, 2010 WL 2243980,2 (S.D.W.Va.2010)(unpublished):

> Applying these cases to Plaintiff's requests for admissions 3, 4, 5, 6, 13 and 15, the Court finds that all of the requests properly seek application of law to the facts of this case and none of them is a pure question of law unrelated to the facts. Requests 3 and 4 specify that it was the failure to secure the load on the pallet jack that was negligence. If Defendant contends that such failure was not negligence, or that other conduct, such as moving the pallet jack too fast, was negligence, then Defendant should say so.

In sum, the Court should find Defendants' objections to RFAs No.16, 44-49 without merit and order Defendants to answer the requests.

**B. DEFENDANTS' OBJECTIONS TO REQUESTS IN GROUPS I, II, III, IV AND V ARE NOT MADE IN GOOD FAITH, WHERE THE EVIDENCE DOES NOT SHOW THAT DEFENDANTS MADE A REASONABLE INQUIRY IN THEIR ATTEMPT TO RESPOND.**

Defendants refuse to respond to over half of Plaintiffs' requests for admissions. As stated above, in response to the requests for admission within Groups I-IV, Defendants simply track the language of Rule 36(a)(4) to claim a lack of information or knowledge. This Court must find these claims lack credibility as the evidence shows that Defendants failed to make reasonable efforts to obtain the information sought, all of which Defendants possess.

As stated in Moore's Federal Practice - Civil §36.11 [5][d]:

> A response is not necessarily adequate if it merely states that the party to whom the request was directed made a reasonable inquiry and the information necessary to admit or deny the matter is not readily obtainable by the party.

7

Rather, "[a] party must show the information is not reasonably within its power to obtain." *U.S. v. Taylor,* 166 F.R.D. 356,363 (M.D.N.C. 1996) (citation omitted). *See also, Wright & Miller* at 2261. In *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981) (emphasis added), the Court found:

> *The discovery process is subject to the overriding limitation of good faith*. Callous disregard of discovery responsibilities cannot be condoned. . . . [P]ermitting a party to avoid admitting or denying a proper request for admission simply by tracking the language of Rule 36(a) would encourage additional abuse of the discovery process. Instead of making an evasive or meritless denial, which clearly would result in the matter being deemed admitted, a party could comply with the Rule merely by having his attorney submit the language of the Rule in response to the request.

A response is insufficient "if the evidence does not show that the party did, in fact, make a reasonable inquiry. Moore's Federal Practice - Civil §36.11 [5][d], *citing In re Sweeten*, 56 B.R. 675, 678 (Bankr. E.D.Pa 1986). As noted in *Diederich, supra* at 617:

> [A] "reasonable inquiry" includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.

*See also Concerned Citizens v. Belle Haven Club*, 223 F.R.D. 39, 44 (D.Conn. 2004) (defining reasonable inquiry as "a reasonable effort, to secure information that is readily available from persons and documents within the responding party's relative control," and noting that "[t]he operative words are 'reasonable' and 'due diligence') (citations omitted). In the instant case, the evidence establishes that Defendants have exercised neither "reasonableness" nor "due diligence" in their attempt to respond.

Group I RFAs (Nos. 17 - 23) sought an admission or denial as to the number of cases in which Defendant Eliseo Cabrera has been involved, where applicants for entry with facially valid U.S. passports, and/or facially valid Texas birth certificates showing

8

birth with the aid of a midwife, have been detained and interrogated, following which they signed documents allegedly withdrawing their applications for admission. The RFAs asked whether he has been involved with at least 5, 8, 10, 15, 20, 30, or 50 cases. Clearly, Defendant Cabrera himself, if he had been asked, would have an inkling of the number of cases in his career involving this fact pattern. Moreover, as he told Trinidad Muraira de Castro, he has it "writte[n] down" in a notebook, [131:4]. The RFAs do not call for a precise number of cases, rather they ask for a minimum number with which this Defendant was involved. A federal officer should know the very minimum number of cases presenting this fact scenario in which s/he was involved. Failure to respond to each proposed minimum number of cases suggests either that Cabrera was not asked, or, possibly, he was asked but claimed some privilege, but that Defendants did not consult their own records.

Similarly, Group II RFAs (Nos. 24-28), sought an admission or denial as to the same information regarding such cases in which Defendant Cabrera was *not* involved. For the same reasons, it is hard to believe that Defendant Cabrera, or other officers regularly stationed at the ports of entry, are unaware of the approximate number of such cases in which he was not involved. It also appears that there are notebooks in which CBP officers, or at least Defendant Cabrera, kept track of such events. These notebooks should be available to Defendants.

Group III RFAs (Nos. 29-35) and Group IV RFAs (No. 36-40), sought the minimum number of cases involving Defendant Cabrera and not involving Defendant Eliseo, respectively, where passports, drivers licenses, or other documents were confiscated from applicants for entry with facially valid U.S. passports, and/or facially valid Texas birth certificates showing birth with the aid of a midwife, who signed documents allegedly withdrawing their applications for admission and who were not offered a due process hearing to contest the seizure of their documents. The RFAs asked whether Defendant Cabrera was involved and whether Defendant Eliseo was not involved

with at least 5, 8, 10, 15, 20, 30, or 50 cases. Again, Defendants failure to respond to each proposed minimum number of cases necessarily suggests that either Cabrera was not asked, or refused to answer, what any federal officer should know about the very minimum number of cases presenting this fact scenario.

Moreover, passports, drivers licenses, and Social Security cards are sensitive documents. As seen in *Ascencio*, CA B-94-215, CBP does keep records of such documents when confiscated. They cannot now claim they have no idea how often this occurs.

Group V RFAs (Nos. 50 – 52) seek to establish a "floor" under the denial of passport applications from people with facially valid Texas birth certificates showing birth with the aid of a midwife, on the grounds that the applicants allegedly failed to meet their burden of proving that s/he was born in Texas, *i.e.*, that they were U.S. nationals, within the meaning of 22 C.F.R. §51.2(a). As discussed above, it is simply not credible that Defendants have been unable, following a good faith effort, to determine a base number of such applications that have been denied.

### C. DEFENDANTS' OBJECTIONS TO THE FORMAT OF PLAINTIFFS' RFAs AND ALLEGATIONS OF BURDEN ARE UNJUSTIFIED.

Defendants' responses to the RFAs in Groups I, II, III, IV, and V contain boilerplate language objecting to the format of Plaintiffs' RFAs alleging they are "vague, ambiguous, compound, and overbroad." In addition, these responses also claim that the request is "unduly burdensome an overbroad in scope." Generalized, blanket assertions that a discovery request is vague or overbroad are insufficient to justify denial of discovery. *Scott v. Courtesy Inns, Inc.*, 472 F.2d 563, 564 (5th Cir. 1973). This Court should reject Defendants' objections as lacking any justification.

In assessing similar objections, the district court in *Diederich, supra*, stated, 132 F.R.D. at 619:

> Despite defendant's sundry objections as to alleged vagueness and ambiguity . . . plaintiff's Requests appear

10

> capable of a simple yes or no answer based on information reasonably available to the answering party; the extent to which attorneys' investigation of the facts is necessary or burdensome is *not* a basis for objection under the circumstances here. It is perhaps to be considered in extending time to respond.

*See also United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967-968 (3d Cir. 1988) ("the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification") (citation omitted); Moore's Federal Practice - Civil §36.10 [6] ("In response to an unambiguous, succinct, but specific request for admission the responding party should simply be able to agree or disagree with the request, that is, to admit or deny the request, to explain succinctly why it is not possible to answer, or to offer any other necessary qualification").

Here, Plaintiffs' RFAs all are capable of a "simple yes or no answer." *Diederich*, 132 F.R.D. at 619. All of Plaintiffs' RFAs lay out a specific set of facts that are relevant to the issues before this Court and relevant to establishing numerosity for the proposed class.

Similarly, any claim of burden or broadness of scope also must fail. Defendants have not provided any details as to any associated "burdens" with, for example, speaking to or reviewing CBP records, or Defendant Cabrera's notebooks, or consulting or searching Department of State databases to assess the number of passport applications that have been denied. Importantly, with respect to RFAs asking about the number of denied passport applications (Group V), if the class were certified, Defendants would be obligated to determine the number of class members and presumably would be able to do so as Defendants have made no claim that determining the number of cases is not possible. Thus, Defendants' claim that producing a minimum number of cases which would fall within the class definition at this stage is disingenuous. Moreover, Defendants have had ample time to conduct

11

the investigation necessary to respond to the RFAs and never asked for additional time, in order to conduct an investigation.

Finally, Defendants have not substantiated their conclusory statements that the requested discovery is vague and overbroad. *Hammond v. Lowe's Home Centers, Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003) ("The objecting party must show specifically how, despite the broad and liberal construction of the federal discovery rules, each question is overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"). Accordingly, Defendant's boilerplate vague and overbroad objections should be overruled.

### D. PLAINTIFFS' RFAs COMPORT WITH THE SCOPE OF DISCOVERY.

Defendants' responses to the RFAs in Groups I, II, III, IV, and V similarly contain boilerplate language asserting that that each request "exceeds the scope of permissible discovery." F.R.Civ.P. 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense..." The Rule further provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Courts construe this rule liberally to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Courts, including the Fifth Circuit, have permitted broad discovery in actions implicating fundamental constitutional rights. *See Duke v. University of Texas*, 729 F.2d 994, 997 (5th Cir. 1984) (failure to allow requested discovery in Title VII sex discrimination lawsuit was an abuse of discretion); *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir.1973) (reversing judgment in racial discrimination case and remanding for a new trial due to denial of discovery of data of employment practices); *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("actions alleging violations of §1983 require especially generous discovery").

12

Finally, Plaintiffs' need for discovery of the number of cases with similar fact patterns is patently necessary to explore questions of commonality and numerosity, which are germane to the issue of class certification. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566,1570-71 (11th Cir. 1982) ("To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits").

As this case implicates both Constitutional claims of birthright citizenship, and the due process rights necessary to adjudicate such claims, and also is styled as a class action, Plaintiffs' requests for admission are appropriate.

### IV.  PLAINTIFFS' ATTEMPTS TO RESOLVE THE PROBLEM

Extensive discussions were held with respect to the Requests for Admission.  Plaintiffs argued that the questions involving legal matters were proper, because they sought to discover Defendants' current positions, as applied to the facts herein, not "pure questions of law."  The discussions on RFAs seeking to establish a "floor" under the number of potential class members left Plaintiffs with the impression that Defendants take the position that, absent iron-clad proof of something, they cannot "admit" it, in response to an RFA.  On the one hand, this seems to be an overly restrictive view, and greatly increases the work for all concerned.  On the other hand, however, it opens the door to attorneys fees with respect to virtually every aspect of the case.

### V.  CONCLUSION

Following the return of Defendants' counsel, the parties have consulted extensively, resulting in an "amended" set of responses differing only in form.  Even the response to RFA No. 3, relating to the birth of Plaintiff "CAG," the only change was that, instead of simply denying the RFA, Defendants now claim, [122:6], that:

> Defendants lack knowledge or information to admit or deny the request for admission. Defendants have made a

13

> reasonable inquiry but the information presently known or the information that can readily be obtained is insufficient to admit or deny the request, so Defendants deny the request for admission.

However, Plaintiffs informed Defendants that "CAG" was born in a hospital, and that her hospital birth certificate had been shown to Defendant Cabrera, who deemed it sufficient proof of her U.S. citizenship. And on December 31, 2010, CAG's birth certificate was served on Defendants, and filed as a sealed exhibit, [117]. A "reasonable inquiry" would include checking the exhibits filed in the case. Clearly, that was not done. Defendants' failure to even consult the exhibits on file before denying an RFA, allegedly based lack of knowledge, only underscores their failure to be specific in their other attempts to make "reasonable inquiries" before declining to admit RFAs such as whether there have been at least fifty passport applications denied in cases where from people with facially valid Texas birth certificates showing birth with the aid of a midwife, on the grounds that the applicants allegedly failed to meet their burden of proving that s/he was born in Texas, *i.e.*, that they were U.S. nationals, within the meaning of 22 C.F.R. §51.2(a), RFA No. 50 [122:32].

For the foregoing reasons, this Court should find that Defendants' amended objections to Plaintiffs' first set of Requests for Admission are unwarranted. In accordance with F.R.Civ.P. 37(a)(5), the Court should order Defendants to pay their fees and expenses, and should further order Defendants to answer the requests within 30 days of this Court's ruling on the instant motion.

Respectfully Submitted,
s/
Lisa S. Brodyaga, Attorney          Jaime M. Diez, Attorney
REFUGIO DEL RIO GRANDE              JONES & CRANE
17891 Landrum Park Road             P.O. Box 3070
San Benito, TX 78586                Brownsville, TX 78523
(956) 421-3226                      (956) 544-3565
Federal ID: 1178,
Texas Bar 03052800

```
Ed Stapleton, Attorney
2401 Wildflower Dr., Suite D
Brownsville, TX 78526
(956) 504-0882
(956) 504-0814 (fax)
Federal ID: 1501, Tx Bar: 19058400
```

CERTIFICATE OF SERVICE

I certify that copies of the above, and proposed order, were served electronically on Elizabeth Stevens, Attorney, OIL, Julie Saltman, Attorney, OIL, and Victor Rodriguez, AUSA, on February 12, 2011.

s/ Lisa S. Brodyaga

15